***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Holmes, along with the briefs and arguments on appeal. Accordingly, the Full Commission REVERSES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as:
 STIPULATIONS
1. When the parties entered into the pre-trial agreement at the August 25, 2003 hearing, the plaintiff amended the alleged injury date from April 16, 2001 to March 25, 2001.
2. The North Carolina Industrial Commission has jurisdiction over this case, and all parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. On the date of the accident, an Employer/Employee relationship existed between the parties.
4. At the time of the calling of the case, the parties notified the Deputy Commissioner that they had agreed that at all relevant times, plaintiff's average weekly wage was $800.00; however, the Commission reserved the right for each attorney to argue a different average weekly wage in their contentions should the evidence produce a different result.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff, LeAnne G. Thier, has legally changed her name back to her maiden name, LeAnne Graboski. Her date of birth is May 24, 1967.
2. Plaintiff graduated from high school and then attended school at a hair styling academy for two years and obtained her cosmetology license.
3. At the time of the incident, plaintiff was manager of the deli/bakery at the McKee Road Harris Teeter in Charlotte. Her responsibilities included making sure that the deli/bakery was properly stocked, stocking the cooler, making sure that the products were in order in the cooler and freezer, and ensuring that the frozen items did not stay in the back freezer for an extended amount of time.
4. Plaintiff testified that on March 25, 2001, she had gone to the back freezer, obtained a float (or trolley) of frozen items, and brought the float of frozen products to the freezer in the deli-bakery department. She then proceeded to unload the frozen items.
5. According to plaintiff's testimony, on March 25, 2001 she was placing a fifty-pound box of frozen chicken on a shelf that was approximately shoulder level. She had her hands in the hand-holes on each side of the box. When she attempted to lift the box up on the shelf, the product in the box shifted, causing the box to tilt. She lost her balance, and the box dropped to the floor. As it fell, her right hand became stuck in the cutout handhold, pulling her right arm and shoulder. She immediately felt severe pain.
6. The same day as the incident plaintiff reported her injury to her boss, Ashley Lamb, but Ms. Lamb never wrote up an accident report or sent plaintiff to a doctor.
7. The first physician that plaintiff saw following the incident was Dr. Brenda Cowell, her family physician. Plaintiff testified at the hearing that she provided a history to Dr. Cowell of what had happened on March 25, 2001.
8. Dr. Cowell testified that the history that plaintiff provided to her is what is contained in her April 9, 2001 note, that plaintiff "had a six to eight week history of right shoulder pain, which had been worsening. She had some mild discomfort in the shoulder that had become aggravated when she swung up a fifty-pound box at work, then the pain had been constant and worsened."
9. Dr. Jerry L. Barron, a board certified orthopaedic surgeon first saw plaintiff on April 15, 2001. Dr. Barron testified that "[s]he gave me the history of working at Harris Teeter as a Department Manager in the deli, and she stated that four weeks prior to that time she was unloading a truck at Harris Teeter when she was lifting a 50-pound box of fried chicken going overhead with it, and she had a sharp pain in her shoulder, and since that time she had pain and difficulty with lifting."
10. Plaintiff testified that the boxes of frozen chicken previously weighed only thirty-five pounds, had recently changed to fifty pounds. She indicated that the change in weights had happened in approximately the month or two prior to her injury.
11. The greater weight of the evidence indicates that on March 25, 2001 as plaintiff was lifting a 50-pound box of frozen chicken, the product in the box shifted, causing the box to tilt. Plaintiff lost her balance and the box dropped to the floor, pulling her right arm.
12. After viewing an MRI of plaintiff's shoulder, Dr. Barron diagnosed impingement with rotator cuff tendonitis. Dr. Barron determined that she needed to be treated with surgery. Dr. Barron performed this surgery, repairing the torn cartilage, and tightening the shoulder. He also performed an arthroscopic subacromial decompression.
13. Harris Teeter paid the full premium for the short-term and long-term disability benefits received by plaintiff.
14. Plaintiff reached maximum medical improvement on April 1, 2002. Dr. Barron assigned a 10% Permanent Partial Disability rating to her shoulder.
15. Plaintiff was out of work due to her shoulder injury from July 11, 2001 until May 14, 2002. Upon her return to defendant-employer, she was given a position as a "sandwich maker" which required lifting beyond plaintiff's restrictions at a pay rate less than her pre-injury wages.
16. The plaintiff's average weekly wage on the date of the accident was $800.00, which yields a weekly compensation rate of $533.34.
17. Plaintiff quit her job with defendant-employer on January 23, 2003 because she had taken a pay cut as a result of the injury and her lifting restrictions were not being met. Plaintiff subsequently unsuccessfully attempted self-employment for 2 months before taking concurrent part-time jobs. Plaintiff's total wages between the 2 part-time jobs were approximately $568.00 per week. The difference between $800.00 and $568.00 is $232.00, yielding a compensation rate for benefits under N.C. Gen. Stat. § 97-30 of $154.67.
18. Plaintiff's work refusal was justified given the reduction in wages and that the job provided exceeded her physical capacity.
19. Plaintiff sustained a compensable injury by accident to her right shoulder on March 25, 2001 when the box she was lifting shifted, causing her to lose her balance and drop the fifty-pound box with her right hand caught in the handle as it fell, jerking her right arm and shoulder.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On March 25, 2001 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer when she attempted to lift a 50-pound box of frozen chicken. The contents of the box shifted, causing the box to pull to one side, jerking plaintiff's right hand, arm, and shoulder. The box's weight shift and plaintiff's hand and arm becoming stuck and pulled were unlooked for and untoward events arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6).
2. Defendants are entitled to a credit for benefits paid to plaintiff under defendant's short-term and long-term disability plans. N.C. Gen. Stat. § 97-42.
3. As a result of her injury on March 25, 2001, plaintiff was disabled and is entitled to, subject to defendants' credit and attorney's fees, temporary total disability compensation at the rate of $533.34 per week from July 31, 2001 up to and including April 1, 2002. N.C. Gen. Stat. §97-29.
4. As a result of her injury on March 25, 2001, plaintiff was temporarily partially disabled from May 14, 2002 up to and including February 4, 2003. N.C. Gen. Stat. § 97-30.
5. As a result of her injury on March 25, 2001, plaintiff sustained a 10% permanent partial disability rating to her shoulder and is entitled to compensation of $533.34 per week for 24 weeks pursuant to N.C. Gen. Stat. §97-31.
6. Plaintiff is entitled to elect the more munificent remedy between N.C. Gen. Stat. §§ 97-30 and 97-31. McLean v. Eaton Corp., 125 N.C. App. 391
(1997).
7. Plaintiff is entitled to the payment of medical expenses incurred by plaintiff as a result of the compensable injury of March 25, 2001.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants are entitled to a credit for benefits paid to plaintiff under defendant's short-term and long-term disability plans.
2. Defendants shall pay, subject to defendants' credit and attorney's fees, temporary total disability compensation at the rate of $533.34 per week from July 31, 2001 up to and including April 1, 2002.
3. Defendants shall pay, subject to defendants' credit and attorney's fees, permanent partial disability compensation of $533.34 for 24 weeks.
4. Defendants shall pay all medical expenses incurred by plaintiff as a result of the compensable injury of March 25, 2001.
5. A reasonable attorney's fee of twenty-five percent of the compensation due under paragraphs 2 and 3 of this award is hereby approved for counsel for plaintiff. Twenty-five percent of the accrued sum shall be paid directly to plaintiff's counsel.
6. Defendants shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER